## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER BATTLE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | **7 : 20-CV-106 (WLS)** |
| SHAWN EMMONS, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER and RECOMMENDATION

Pending in this action brought pursuant to 42 U.S.C. § 1983 are a Motion for Summary Judgment filed on behalf of Defendants and a motion seeking a jury trial filed by Plaintiff. (Docs. 29, 47). Plaintiff was notified of the filing of Defendants' Motion for Summary Judgment, advised of his obligations under the law, and directed to respond thereto within thirty (30) days. (Doc. 49). Plaintiff has responded to Defendants' motion. (Doc. 33).[1]

Plaintiff filed this action in June 2020, and his Eighth Amendment pervasive violence and failure to protect claims against Defendants Emmons, Shropshire, Pineiro, and Smith were allowed to proceed. (Doc. 13). In his Complaint, recast at the direction of the Court, Plaintiff alleges that while he was confined at Valdosta State Prison ("VSP") he was attacked by a known gang member with boiling water. *Id.* Plaintiff maintains that inmate Charles Griffin used a "hot water bug" to boil water, which he threw at Plaintiff on November 20, 2019, causing severe burns that required skin grafts. *Id.* Plaintiff also alleges that there was pervasive violence in the

---

[1] Although Plaintiff sought and received an extension of time to file an additional response to Defendants' summary judgment motion, he has not filed an additional response. (Docs. 50, 51).

prison prior to the attack, that inmate Griffin had been found with other contraband two (2) weeks prior to the attack but not disciplined, and that each Defendant was aware of the pervasive violence in the prison. *Id.*

## RECOMMENDATION

Defendants filed a Motion for Summary Judgment on September 9, 2021. (Doc. 29). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

As the parties moving for summary judgment, Defendants have the initial burden to demonstrate that no genuine issue of material fact remains in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).   The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record, including pleadings, discovery materials, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "If a party fails to properly support an assertion of fact or fails to

properly address another party's assertion of fact as required by Rule 56(c), the court may . . .

grant summary judgment if the motion and supporting materials - including the facts considered

undisputed - show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

It is well settled that "[a] prison official's 'deliberate indifference' to a substantial risk of

serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825,

828-829 (1994). "[P]rison officials have a duty . . . to protect prisoners from violence at the

hands of other prisoners. . . [although i]t is not . . . every injury suffered by one inmate at the

hands of another that translates into a constitutional liability for prison officials responsible for

the victim's safety." *Id.* at 832, 834. To establish a claim of deliberate indifference, Plaintiff must

produce "sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants'

deliberate indifference to that risk; and (3) causation." *Hale v.Tallapoosa County*, 50 F.3d 1579,

1582 (11th Cir. 1995). A prison official violates the Eighth Amendment in this context of inmate-

on-inmate violence "when a substantial risk of serious harm, of which the official is subjectively

aware, exists and the official does not respond reasonably to the risk." *Caldwell v. Warden, FCI*

*Talledega*, 748 F.3d 1090, 1098 (11th Cir. 2014).

### Defendants' evidence

Defendants have supported their summary judgment motion with their affidavits,

Plaintiff's deposition testimony and documentary evidence pertaining to Plaintiff's incarceration.

(Docs. 29-4 – 29-11). Defendants do not dispute that Plaintiff was attacked by inmate Griffin on

November 20, 2019. However, Defendants maintain that they did not act with deliberate

indifference to any risk of harm to Plaintiff.

In his affidavit, Defendant Emmons testifies that he has been the Warden at VSP since

3

July 1, 2018. (Doc. 29-4, ¶ 2). Emmons states that upon Plaintiff's arrival into the custody of the Georgia Department of Corrections in March 2018, Plaintiff was evaluated at Georgia Diagnostic and Classification Prison and assigned a security level classification of Medium. *Id.* at ¶ 4. Plaintiff was eventually transferred to VSP in September 2019. *Id.* In November 2019, Plaintiff was housed in the VSP Annex, a separate building from the prison designated as a Medium security level facility, with inmate Charles Griffin, who was also classified as a Medium security level inmate. *Id.* at ¶¶ 5-6. The Georgia Department of Corrections attempts to spread out suspected or known gang members throughout its prisons, meaning that gang and non-gang members are sometimes housed together. *Id.* at ¶ 7.

Prior to the November 20, 2019 incident, Defendant Emmons "was not personally aware of any particularized security threat that inmate Griffin may have posed to Battle . . ." *Id.* at ¶ 8. Emmons states that while not all security positions at the VSP Annex were filled as of November 20, 2019 and there were "occasional inmate-on-inmate attacks", Emmons "had no reason to believe and did not believe prior to November 20, 2019 that housing [Plaintiff] in the VSP Annex posed an unreasonable risk to his safety from inmate Griffin or any other inmate" [or] "due to the drug use of other inmates." *Id.* at ¶ 9. According to Emmons, disciplinary action was not pursued against inmate Griffin and others for contraband possession in the weeks prior to November 20, 2019 due to a lack of conclusive evidence. *Id.* at ¶ 10.

In his affidavit testimony, Defendant Pineiro testifies that he is the Deputy Warden of Care and Treatment at VSP, including the Annex. (Doc. 29-7, ¶ 2). Pineiro states that he was not personally aware of any particularized threat to Plaintiff from inmate Griffin, nor did he believe that Plaintiff was under an unreasonable risk to his safety by virtue of other inmates, the drug use

of other inmates, or the presence of contraband. *Id.* at ¶¶ 8-10.

Defendant Shropshire, who is the Deputy Warden of Security at VSP, states that he was not personally aware of any particularized threat to Plaintiff from inmate Griffin, nor did he believe that Plaintiff was under an unreasonable risk to his safety by virtue of other inmates, the drug use of other inmates, or the presence of contraband. (Doc. 29-9, ¶¶ 8-11). Shropshire adds that he was unaware of inmate Griffin allegedly possessing contraband prior to November 20, 2019, and that approximately one week prior to the attack on Plaintiff, Shropshire told the VSP Annex inmates that if they continued to smoke, he would perform a shakedown of the Annex. *Id.* at ¶¶ 10-11. No shakedown was performed as Shropshire did not receive any additional reports of smoking by the inmates. *Id.* at ¶ 11.

Defendant Smith testifies in her affidavit that she is the Unit Manager at VSP Annex, and that she was not personally aware of any particularized threat to Plaintiff from inmate Griffin, nor did he believe that Plaintiff was under an unreasonable risk to his safety by virtue of other inmates, the drug use of other inmates, or the presence of contraband. (Doc. 29-10, ¶¶ 2, 8-10). Smith maintains that Plaintiff's allegations that she was using inmate Griffin as an "enforcer" and leaked information to imply that Plaintiff was a "snitch" are false. *Id.* at ¶ 11.

Plaintiff was deposed by defense counsel on June 22, 2021. (Doc. 29-11). In his deposition testimony, Plaintiff testifies that he was released from prison in February 2021. *Id.* at p. 5. According to Plaintiff he had no issues with inmate Griffin prior to the November 20, 2019 incident, but Griffin had been found with a cell phone and a knife two (2) weeks prior to the incident and was not disciplined. *Id.* at pp. 12-13. Plaintiff also testified that Defendant Smith used inmate Griffin for special tasks, did not remove Griffin from the dorm based on his special

status, and provided Griffin with information that caused Plaintiff to be labeled a snitch. *Id.* at pp. 16, 23. According to Plaintiff, Defendant Emmons was aware of daily "incidents" in the prison, as well as the presence of contraband, and Defendant Shropshire also was aware of contraband yet failed to remove it. *Id.* at p. 25. Plaintiff maintains that Defendant Pineiro misclassified Plaintiff and Griffin because they should not have been housed together. *Id.* at pp. 25-26. Although Plaintiff states he wrote some letters to counselors expressing concerns over safety at the prison prior to the November 2019 incident, he did not write to or speak to Defendant Emmons about his concerns, and he did not have any conversations with Defendants other than Defendant Smith about his safety concerns prior to the incident. *Id.* at pp. 37-40.

***Plaintiff's evidence***

In support of his response to Defendants' summary judgment motion, Plaintiff has submitted his affidavit, along with various prison incident and disciplinary reports, and documentation of prison policy. (Docs. 33-2 – 33-14). The Court notes that a portion of Plaintiff's recast Complaint is verified. (Doc. 6-1).

In his affidavit submitted in response to Defendants' summary judgment motion, Plaintiff states that he "know[s] that all Defendants . . . were all aware of the violent conditions of the prison and the drug use. They were also aware of the contraband that was coming in to [sic] the prison, staying in the prison and allowed Griffin to get away with staying in an open dorm." (Doc. 33-2, ¶ 3). Plaintiff states that he witnessed "multiple incidents at VSP that including [sic] drugs and violence". *Id.* at ¶ 4. According to Plaintiff, Defendant Smith told "others" that he was a "snitch", leading to inmate Griffin's hostility towards Plaintiff. Also, that Defendant Shropshire threatened a shake down of the dorm but did not conduct a shake down prior to the

6

incident in question, and that Defendant Pineiro was responsible for classification of inmates. *Id.* at ¶¶ 6-8.

In the verified portions of his recast Complaint, Plaintiff states that "[a]t the time/date [of the incident], inmates [at VSP] were constantly being assaulted and killed by gang affiliated inmates. The prison was short staffed daily and all types of illegal drugs and drug usage were present." (Doc. 6-1, ¶ 8). Plaintiff states that "Defendants were aware of the conditions of the prison and the incidents reported regularly, including death assaults, positive drug tests and inmate to inmate violence." *Id.* at ¶ 10. According to Plaintiff, inmate Griffin was found with a cell phone and knife, both items of contraband, in the weeks prior to the November 2019 incident, but was not disciplined for possessing contraband. *Id.* at ¶ 17.

*Analysis*

Viewing the facts in the light most favorable to Plaintiff as the non-moving party, as set forth in his verified recast Complaint and affidavit, Plaintiff was attacked by inmate Griffin on November 20, 2019, when Griffin threw boiling water on Plaintiff. Plaintiff had not experienced any issues with inmate Griffin prior to the incident. At the time of the incident, the prison was not fully staffed, and Defendants were aware of occurrences of violence, the presence of contraband, and drug use by inmates confined in the prison.

Plaintiff has not established that any of the Defendants had the subjective knowledge that Plaintiff was facing a serious risk of harm from the attacking inmate. "To prove that [Defendants were] deliberately indifferent to the risk that he would be injured, [Plaintiff] had to prove: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'" *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013)

*quoting Townsend v. Jefferson County*, 601 F.3d 1152, 1158 (11th Cir. 2010). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious'". *Goebert v. Lee* County, 510 F.3d 1312, 1327 (11th Cir. 2007) *quoting Farmer*, 511 U.S. at 842.

"In determining subjective knowledge, a court is to inquire whether the defendant was aware of a 'particularized threat or fear felt by [the plaintiff]." *McBride v. Rivers*, 170 F. A'ppx 648, 654 (11th Cir. 2006), *quoting Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003). Plaintiff does not state that he conveyed any specific threat to his safety to Defendants, nor does he provide any support for his conclusory allegations that Defendants were aware of ongoing violence, drug use, and contraband possession by inmates to the levels described by Plaintiff. Such conclusory allegations are not sufficient to establish Defendants' subjective awareness of a risk of serious harm to Plaintiff. *McBride*, 170 F. A'ppx at 655 (Plaintiff "did not identify a specific prior incident, from which the defendant[s] could infer that a substantial risk existed", and "failed to show that defendants had subjective knowledge of a risk of serious harm".). Defendants "must be aware of specific facts from which an inference could be drawn that a substantial risk of harm exists – and the [Defendants] must also draw that inference." *Carter*, 352 F.3d at 1349.

Indeed, there is no indication that any of the Defendants possessed any knowledge of a threat of violence against Plaintiff at the time in question. Although Plaintiff relies in part on his allegations that Defendant Shropshire threatened a shakedown of the VSP Annex based on

inmates smoking, this does not translate to knowledge on behalf of Shropshire or the other Defendants of a significant threat of harm to Plaintiff based on knowledge of contraband in general. There is no indication that Defendants were aware that the specific type of contraband used in the attack on Plaintiff (a "hot water bug") was possessed by inmate Griffin or others. Although "an official may not escape liability merely by showing that he did not know the claimant was likely to be assaulted or that an assault would be committed by the specific prisoner who eventually committed the assault", Plaintiff has presented no evidence that Defendants were somehow informed or aware of any substantial risk of harm. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1995).

Unlike the present case, in *Hale*, the plaintiff produced evidence of previous inmate-on-inmate violence at his overcrowded jail, which had resulted in injuries requiring medical attention, and presented depositions and affidavits supporting a finding that the defendant jailer subjectively knew that a substantial risk of harm existed at the jail. *Id.* Additionally, an expert testified that given the conditions at the jail during the time period in question, "it was plainly foreseeable to a reasonable law enforcement official that a violent attack was likely to occur", resulting in a denial of summary judgment for the jailer. *Id.*

"The essential problem here . . . is that there is no evidence of [Defendants'] subjective knowledge [regarding the threat of attack on Plaintiff]. Nothing in the record even remotely suggests that [Defendants] had any belief, suspicion, knowledge, or inclination that [the attack would take place], nor that [Defendants] had actual knowledge that [there was a particularized threat against Plaintiff]." *Estate of Owens v. GEO Group, Inc.*, 660 F. A'ppx 763, 770 (11th Cir. 2016).

Moreover, "in order to succeed on a 'prison conditions' theory, a plaintiff cannot rely simply on 'occasional [or] isolated attacks by one prisoner on another' but rather must prove 'confinement in a prison where violence and terror reign.'" *Estate of Owens*, 660 F. A'ppx at 771. Plaintiff's evidence consisting of incident and disciplinary reports, some of which pertain to prisons other than VSP, do not establish that Defendants were aware of levels of violence, contraband possession, and drug use at VSP that would form the basis of a substantial risk of serious harm to Plaintiff. "[W]ithout showing a regular or constant threat of violence, procedures used by a prison – even if deficient – do not amount to deliberate indifference or violate the Eighth Amendment's cruel and unusual punishment clause." *Id.*

**Qualified immunity**

As the Court finds no constitutional violation based on the facts provided, Defendants are also entitled to qualified immunity. *Baltimore v. City of Albany, Ga*., 183 F. A'ppx 891, 896 (11th Cir. 2006).

Accordingly, it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment be **GRANTED**. (Doc. 29). Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. Any objection is limited in length to TWENTY (20) PAGES. *See* M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination as to those portions of the Recommendation to which objection is made; all other portions of the Recommendation may

be reviewed by the District Judge for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**ORDER**

In a motion filed on April 5, 2022, Plaintiff requests a jury trial. (Doc. 47). This motion is **DENIED** at this time.

**SO ORDERED and RECOMMENDED**, this 18th day of July, 2022.

*s/ THOMAS Q. LANGSTAFF*

**UNITED STATES MAGISTRATE JUDGE**